## **AFFIDAVIT OF DET. GREG WALSH**

I, Greg Walsh, being duly sworn, depose and state as follows:

1. I am a Detective with the Boston Police Department ("BPD") where I have been employed for more than 10 years. I am currently assigned to the Drug Control Unit ("DCU") in District D-4, which covers neighborhoods in Back Bay, South End, Lower Roxbury and the Fenway areas of Boston.

2. During my tenure with the Boston Police Department, I have participated in investigations relating to the distribution of controlled substances including cocaine, cocaine base (also known as "crack cocaine"), heroin, marijuana, and other illegal drugs and have received training in the area of narcotics investigations. I have been the affiant on affidavits in support of search warrants, arrest warrants, and other applications. I have also made many seizures of crack cocaine and have identified this substance in the field on dozens of occasions.

3. This Affidavit is submitted in support of an application for a criminal complaint charging **JAVAN TOOLEY** and **SEAN JONES, A/K/A "HERBERT JONES,"** with: (I) conspiracy to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 860; and (ii) possession of cocaine, a Schedule II controlled substance, with intent to distribute and distribution of cocaine/ aiding and abetting in

-1-

violation of Title 21, United States Code, Section 841(a) and Title 18, United States Code, Section 2. On January 21, 2010, **TOOLEY** and **JONES** were arrested in the area of Harrison Avenue and Savoy Street after they sold suspected crack cocaine to an undercover police officer ("the UC"). Still more suspected crack cocaine was recovered from **TOOLEY** after officers advised him that they intended to get a warrant in order to do a body cavity search and he voluntarily turned over 30 bags of the suspected drug at District D-4 after he was booked.

4. I am familiar with and was present during the underlying investigation and arrests. I reviewed reports pertaining to this incident, conducted surveillance and spoke with the UC as well as the officers who arrested **TOOLEY** and **JONES** at approximately 2:00 a.m. that morning.

5. This affidavit does not set forth all the facts developed during the underlying investigation. Rather, it sets forth facts I believe to be sufficient to establish probable cause to believe that **TOOLEY** and **JONES** committed the crimes set forth in the accompanying Criminal Complaint.

6. For months, members of the D-4 DCU have been investigating trafficking in and around areas in District D-4 that have historically attracted drug traffickers. Among other places, these efforts have involved operations in and around the Pine Street Inn located at 444 Harrison Avenue. This is an area

frequented by many drug abusers who in turn attract dealers seeking to take advantage of them.  Based on increasing drug activity in this area and the occurrence of violence associated with it, BPD undercover officers have been used to purchase street level amounts of drugs, (usually that form of cocaine known as cocaine base or "crack cocaine"), from individuals who come into the area to sell drugs.

   7. Activity in these operations was conducted by the Drug Control Units from Districts D-4 and D-14 on January 21, 2010. Shortly before 2 a.m. that morning, a BPD undercover officer ("the UC") was deployed in the area of the Pine Street Inn for the purpose of making undercover buys of crack cocaine.  The UC is a veteran of the Boston Police Department who, like me, has been involved in many investigations involving crack cocaine and is familiar with its color, texture, and appearance, and who has frequently been called upon to identify the drug in the field. Prior to going into this area, the UC had been given $60 of serialized BPD buy money.  Other officers were also deployed in this area to conduct surveillance and protect the UC (who was equipped with a non-recording transmitter that allowed officers to monitor conversations the UC had while on the street).[1]

   8. The UC was deployed in the area of the Albany and E.

---

[1] The UC was also using a video camera with no audio capability which malfunctioned and did not capture any of the events described in this affidavit.

3

Berkeley Streets. After getting to this area, the UC proceeded on E. Berkeley Street towards Harrison Avenue when he/she walked by a male later identified as **JONES**. As the UC walked past **JONES**, **JONES** asked the UC whether he/she was "looking" (a common term used in the area to determine if someone is looking to buy drugs). The UC told **JONES** that he/she wanted "2 for 40," i.e., that the UC wanted 2 $20 bags of crack cocaine for $40. **JONES** told the UC that he (**JONES**) "got you" and directed the UC to follow him.

9. The UC and **JONES** continued on E. Berkeley Street and then took a left turn onto Harrison Avenue. As they were walking down Harrison Avenue, the UC and **JONES** were approached by a third man subsequently identified as **TOOLEY** and the three men continued walking to Randolph Street where they took another left turn.

10. When the group had walked approximately 15 feet down Randolph Street, **TOOLEY** stopped and removed a plastic bag from his jacket that appeared to contained several individually wrapped pieces of crack cocaine. **TOOLEY** took several pieces of crack out of the bag and handed them to **JONES** who then handed them on to the UC. The UC then handed $40 of the BPD buy money to **TOOLEY** and left, alerting other officers over the transmitter that the deal was complete and describing the two men (**TOOLEY** and **JONES**) who had just sold the UC drugs.

-4-

11. Officers kept **TOOLEY** and **JONES** under surveillance as the UC walked away. **TOOLEY** and **JONES** walked back up to Harrison Avenue where they joined a group of persons already on the corner for several minutes before proceeding further up Harrison Avenue. When **TOOLEY** and **JONES** reached the intersection of Harrison Avenue and Savoy Street, they were approached by Sgt. Det. Fitzpatrick and other surveillance officers who placed both men under arrest. At this time, Sgt. Det. Fitzpatrick recognized **TOOLEY** from a prior drug arrest made earlier in 2009 in which **TOOLEY** had secreted 16 bags of crack cocaine in the area of his buttocks.

12. **TOOLEY** and **JONES** were then transported back to district D-4 to be booked. While they were waiting for transport, the UC was brought by the area and identified both men as the individuals who had just sold the UC the 2 $20 bags of crack cocaine.

13. Sgt. Det. Fitzgerald received permission to strip search **TOOLEY**. **TOOLEY** refused to cooperate with the officers attempting to conduct the search and repeatedly clenched his buttocks so that officers could not inspect his person. Because of his refusal to cooperate, a decision was made to obtain a search warrant authorizing a body cavity search and **TOOLEY** was placed in a cell under supervision so that a search warrant could be procured.

14. **TOOLEY** was thereafter held under the supervision of

Officer Green.  Approximately four hours later, **TOOLEY** told Officer Green that he would be willing to give Officer Green items he was holding "up my ass" if Officer Green would give **TOOLEY** a telephone number off of **TOOLEY**'s cellular telephone.  Officer Green agreed and Officer Green and Sgt. McCarthy watched **TOOLEY** remove a bag containing 30 smaller bags of suspected crack cocaine from his rear.  These drugs were similar in size, packaging, and appearance to the drugs **TOOLEY** and **JONES** had already sold to the UC and which were inspected (determined to be crack cocaine) and field tested (positive for cocaine base).  All of the drugs have been sent to the state lab for further testing.

15.  The buy money used to purchase the drugs from **TOOLEY** and **JONES** was not recovered.  During the booking process, **TOOLEY** was allowed to make a telephone call and was overheard saying "They say I sold drugs to an undercover officer but they can't make it stick without the buy money."

16.  Based upon the foregoing, I submit there is probable cause to believe that, on January 21, 2010, **JAVAN TOOLEY** and **HERBERT JONES, A/K/A "SEAN JONES,"**: (I) conspired with each other to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 860; and (ii) possessed cocaine, a Schedule II controlled substance, with intent to distribute and distributed and/or aided and abetted the distribution of cocaine in violation of Title 21, United States

Code, Section 841(a) and Title 18 United States Code, Section 2.

Signed under the pains and penalties of perjury this ___ day of March, 2010.

_____
DET. GREG WALSH

Sworn to and subscribed before me this 2nd day of March, 2010.

_____
MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE